# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

KAITLIN BLACKBURN BAKER, et al.,

           Plaintiffs,

v.                                      CIVIL ACTION NO. 5:09-cv-00332

GREEN TREE SERVICING LLC,

           Defendant.

## MEMORANDUM OPINION AND ORDER

On April 2, 2009, Defendant Green Tree Servicing, LLC (Green Tree) removed this civil action from the Circuit Court of Raleigh County. On April 9, 2009, Green Tree filed a Motion to Compel Arbitration and to Dismiss or Stay the Proceeding Pending Arbitration (Motion) [Docket 4] and supporting memorandum [Docket 5]. Following a court-granted extension of time to respond, Plaintiffs Kaitlin Blackburn Baker, Cassandra Blackburn and Tyler Blackburn filed a response [Docket 10], to which Defendant Green Tree replied on May 22, 2010 [Docket 12].[1] The matter being fully briefed and ripe for review, the Court now considers Defendant's motion.

---

[1] Plaintiffs also filed an "Amended Response" after Defendant's reply was filed. With the exception of correcting a typographical error in one of the statutory citations, the Court can discern no differences between the original response (Docket 10) and the amended response (Docket 14). As such, the Court does not need to consider this document for any additional arguments or rebuttals to Defendant's motion.

## I. BACKGROUND

In May of 1999, Plaintiff Kaitlin Baker (Baker) purchased a manufactured home from Country Side Homes.[2] (Docket 4, Exh. A.) The contract provided that Baker would pay GreenPoint Credit Corp. "and any assignee" the purchase price of the home over a thirty-year term. The contract also contained provisions related to the handling of disputes. In particular, the "Dispute Resolution" section provides in pertinent part:

> Any controversy or claim between or among you and me or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below.

(Docket 4, Exh. A at 4.)

At some point thereafter, defendant Green Tree began making attempts to collect this debt.[3] In response to those collection attempts, Baker, along with Cassandra Blackburn and Tyler Blackburn (collectively Plaintiffs), filed the present complaint.[4] Plaintiffs allege violations of the

---

[2] Neither party disputes that Baker purchased the manufactured home. In fact, Plaintiffs admit the same in their Response. (Docket 10 at 1.)

[3] Although Green Tree does not provide any documentary evidence showing that it is an assignee of GreenPoint's interest in the contract, it does affirmatively allege as much. *See* Docket 4 at ¶ 3 ("Ultimately, Green Tree was assigned all of GreenPoint's right, title, and interest in and to the Contract and the Home."). Plaintiffs never dispute this point, and in fact admit that Green Tree is a successor in interest to GreenPoint. *See* Docket 10 at 1 ("The parties all agree that in 1999 the Plaintiff Kaitlin Blackburn Baker purchased a mobile home which was financed by the Defendant or its predecessor in interest.").

[4] As Plaintiffs readily acknowledge, the facts in this dispute are hardly well-developed. Nonetheless, the Court makes this factual conclusion based on the language in Plaintiffs' own response: "During the years that followed, the Defendant has made various attempts to collect the indebtedness set forth in the financing documents." (Docket 10 at 1.)

West Virginia Consumer Credit Protection Act (WVCCPA), as well as various torts including negligence, outrage, infliction of emotional distress, invasion of privacy, and violations of West Virginia Code § 61-8-16. (Docket 1, Exh. A.)

Green Tree contends in its Motion that the clause reprinted above requires this case to be submitted to arbitration. Arguing that there is a strong public policy in favor of enforcing arbitration clauses in contracts that involve interstate commerce, Green Tree asserts that Plaintiffs' claims fall within the scope of the above clause in the contract and therefore must be arbitrated. Plaintiffs responded with several objections to the application of the arbitration provision, including the fact that some of the plaintiffs were minors and non-signatories and that the causes of action alleged do not fall within the ambit of the clause. Plaintiffs further claim that the arbitration provision, if applicable, is unconscionable and should not be enforced. Green Tree replied, once again arguing for application of the provisions and disputing Plaintiffs' claim that the arbitration clause was unconscionable.

## II. LEGAL STANDARDS

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, provides federal courts with the power to compel arbitration in cases where, save for the applicability of an arbitration clause, the case would fall within the court's federal subject matter jurisdiction. In particular, it provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Further, if one party refuses to arbitrate under a written agreement, the other may move for an order compelling the other party to submit to arbitration. 9 U.S.C. § 4. To succeed on a motion to compel arbitration, the moving party must show two things: first, that an agreement was made, and second, that the agreement to arbitrate was breached. *Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.*, 656 F.2d 933, 939 (4th Cir. 1981) (en banc).

When confronted with a motion to compel arbitration, the district court must first "engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997) (citations and quotation marks omitted). Because federal policy generally favors arbitration, ambiguities with respect to the scope of the arbitration clause must be resolved in favor of arbitration. *Kepler Processing Co. v. New Market Land Co.*, 2008 WL 4509377 at *3 (S.D. W. Va. Oct. 2, 2008); *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998) (citing *Volt Info. Scis., Inc. V. Bd. Of Trs. Of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)).

To determine if an arbitration clause is valid, courts look to the contract formation law of the forum state. *Cara's Notions*, 140 F.3d at 569. Once the arbitration clause is deemed valid, the breadth and scope of the clause are governed by the "federal substantive law of arbitrability." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GmbH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000). After the court decides that a particular dispute is covered by an arbitration clause, the court may not proceed to consider the merits of the case and must immediately send the case to arbitration. *Adkins v. Labor Ready, Inc.*, 195 F. Supp. 2d 628, 634 (S.D. W. Va. 2001) (citing *AT&T Techs., Inc. v. CWA*, 475 U.S. 643, 649 (1986)). "[W]e leave all questions concerning the scope of an arbitration

agreement to the arbitrator, 'unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Winston-Salem Mailers Union 133, CWA v. Media Gen. Operations, Inc.*, 55 Fed. Appx. 128, 133 (4th Cir. 2003) (citing *AT&T Techs.*, 475 U.S. at 649-50).

### III.  ANALYSIS

*A.  Kaitlin Blackburn Baker*

Baker, the original signatory on the credit agreement, is certainly bound by the arbitration clause in the credit agreement.  The language of the clause specifically states: "Any controversy or claim between or among you and me or our assignees arising out of or relating to this Contract . . . *including any claim based on or arising from an alleged tort*, shall . . . be determined by arbitration, reference, or trial by a judge as provided below." (Docket 4, Exh. A (emphasis added).) Hence, torts such as those alleged by Baker are to be determined in the same manner as any contractual disputes arising from the contract.  The Dispute Resolution paragraph continues: "A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration." (Docket 4, Exh. A.)

After review of the various causes of action alleged by Baker and the other plaintiffs in the original complaint, the Court finds that it is reasonable to conclude that these torts arise from the single transaction of the credit agreement and ensuing collection efforts.  Specifically, the counts all appear to be based upon Green Tree's various attempts, including telephone calls, to collect the debt due under the original Credit Agreement.  It appears that the alleged factual basis for all of the claims are telephone calls made by Green Tree in attempting to collect the debt.  Those torts would certainly be related to the contract here, where such language covers any action "arising from an

5

alleged tort."(Docket 4, Exh. A at p. 4.) *See J.J. Ryan & Sons, Inc. v. Rhone Pulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988) (holding that broad-form contracts should be construed to cover "every dispute beween the parties having a significant relationship to the contract regardless of the label attached to the dispute"). Without the contract, there would have been no collection calls, and no ability to misstate a debt owed to the Defendant.

Baker's argument that these torts do not fall within the arbitration clause's scope is without merit. The language of the contract clearly states otherwise, as it specifically covers claims "arising from an alleged tort." (Docket 4, Exh. A at 4.) Baker argues that this Court should apply the Eleventh Circuit's test and evaluate the "relationship between the parties" to decide arbitrability. (Docket 10.) As noted previously, the proper test for this circuit is to look at the federal substantive law of arbitrability created by the Federal Arbitration Act. That Act signifies a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

Even if the Court is supposed to look to the parties' relationship, that relationship is one created by the contract which contains the arbitration clause. (Docket 10 at 4 (citing *Blinco v. Green Tree Servicing, LLC*, 400 F.3d 1308 (11th Cir. 2005) for the proposition).) In fact, the relationship was created long before the alleged tort occurred, and the language of the WVCCPA would seem to require such a preexisting relationship, as it creates a cause of action for a consumer against a creditor. *See* W. Va. Code § 46A-5-101(1) (creating a cause of action for a "consumer" if a "creditor" violates the provisions of the Act). Baker and Green Tree's relationship predated the phone calls and other alleged harassment. While the Court is cognizant that not every tort allegedly committed by Green Tree against Baker would fall under the auspices of the credit agreement, the

relationship between the parties for these particular torts did arise from the credit agreement. As such, Baker is bound.

Baker's arguments regarding the unconscionability of the contract are equally unavailing. Baker mistakenly construes the arbitration provision as an exculpatory clause, i.e., one that releases a party from liability. No such release exists in this contract. Instead, an arbitration clause merely governs the manner in which claims and disputes will be handled.

Moreover, the mere fact that the contract is one of adhesion does not void its provisions. The West Virginia Supreme Court of Appeals has held as recently as October 2009 that an adhesion contract can contain an arbitration provision without being unconscionable. *See State ex rel. Clites v. Clawges*, – S.E.2d —, 2009 WL 3320488 (W. Va. Oct. 13, 2009). West Virginia law finds a presumption "that an arbitration provision in a written contract was bargained for."[5] *Bd. of Educ. of the County of Berkeley v. W. Harley Miller, Inc.*, 236 S.E.2d 439 syl. pt. 3 (W. Va. 1977).

Once a court has determined that an adhesion contract exists, the court then looks to the "relative positions of the parties, the nature of the entire contract, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract." *Art's Flower Shop, Inc. v. Chesapeake and Potomac Telephone Co. of West Virginia*,

---

[5] Plaintiffs argue in their Response that this portion of the contract should be more heavily scrutinized because it involves the waiver of a fundamental constitutional right, i.e., the right to trial by jury. In making this argument, Plaintiffs ignore that, despite the language of the United States and West Virginia Constitutions, West Virginia law does allow arbitration clauses. By their very nature, these clauses eliminate the right to a jury trial. While West Virginia courts certainly "give[] close scrutiny to adhesion contracts that abrogate a party's constitutional entitlement to access to the courts," this scrutiny does not work as an absolute prohibition. *See Clawges*, 685 S.E.2d at 701 n.3. Because the Court scrutinizes the arbitration clause with respect to other factors articulated by the West Virginia Supreme Court of Appeals, the Court does not need to separately address this contention.

413 S.E.2d 670, syl. pt. 4 (1991). In this case, none of these factors compel a finding that the contract was unconscionable. Baker has provided this Court with no information to conclude that either the relative positions of the parties or the adequacy of the bargaining positions made the contract unconscionable. In fact, while Baker acknowledges that there was no real bargaining, she indicates that there was no bargaining by either side because the seller was merely using a form contract from a financing company. (Docket 10 at 9.) The Court would first note that the copy of the contract appearing in the record (Docket 4, Exh. A) shows several key places where, despite the contract being primarily a form, bargaining may have occurred. In particular, the annual percentage rate, the total sale price, and late charges sections all appear to be typed into the form contract. Baker has provided no evidence to show that these were not bargained-for numbers. Experience informs the Court that such figures may be subject to the bargaining of the parties.

Further, there is nothing unconscionable about the contract more generally. Baker identifies two sections of the contract as indicative of the supposedly one-sided nature of the contract—first, the "Self-Help, Foreclosure, and Provisional Remedies" section, because it results in Baker surrendering some legal remedies while Green Tree does not, and second the "Attorney Fees" section, because it is alters the way attorneys' fees are allocated. Neither of these provisions appears one-sided or unconscionable to the Court. The lender's ability to foreclose or repossess a home when the buyer defaults is not a new or additional remedy given to the lender by the contract. Instead, it is a remedy independently available to the lender by virtue of law, and the contract does no more than preserve that right and clarify the scope of the rest of the contract. With respect to attorneys' fees, the contract is mutual in its shifting of fees—both parties are entitled to the recovery of attorneys' fees should their side prove to be successful in arbitration. Plaintiffs have pointed to

nothing in West Virginia law that prohibits shifting attorneys' fees by contract or other agreement. Moreover, the language of the fee-shifting paragraph also contains the provision limiting the shift "in accordance with the law." To the extent that Baker's claims are not subject to fee-shifting by law, the arbitrator may choose not to award the fees. Regardless of the substantive outcome, this provision is also not one-sided or unconscionable, as both parties could equally be subject to this fee-shifting provision.

In short, Plaintiff Baker's claims are subject to the arbitration provision contained in the contract.[6]

### B. *Cassandra Blackburn and Tyler Blackburn (Blackburn Plaintiffs)*

Plaintiffs properly point out that the other two plaintiffs, Cassandra and Tyler Blackburn, are not signatories to the contract, and thus argue that they cannot be compelled to arbitrate. Green Tree does not challenge this premise, instead arguing that the Blackburn Plaintiffs are "equitably estopped from avoiding enforcement of the arbitration clause because they are claiming the benefit of the Contract by relying on it to establish their claims." (Docket 12 at 2.)

"The arbitrability of a party's claims is a function of a valid and enforceable contract." *Wilson v. Dell Financial Services, LLC*, 2009 WL 2160775 at *4 (S.D. W. Va. July 16, 2009) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Although a party generally cannot be bound by an arbitration clause in a contract that he did not sign, "a party can agree to submit to arbitration by means other than personally signing a contract containing an

---

[6] To the extent there remains any doubt on the applicability of the arbitration provision to the present dispute, the Court is guided by the language of the arbitration provision indicating that, "Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s)." (Docket 4, Exh. A at 4.) While it appears clear to the Court that this controversy would be covered by the arbitration provision independently, this language leaves no doubt.

9

arbitration clause." *Int'l Paper*, 206 F.3d at 416. Depending on who asserts the claim, different standards apply for binding a non-signatory to a contractual arbitration clause via estoppel. If a signatory brings claims against a non-signatory, the non-signatory may compel arbitration if the signatory's claims "make[] reference to or presume[] the existence of the written agreement." *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006) (citing *Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005)). If, on the other hand, the claim is brought by a non-signatory, the signatory can compel arbitration under the terms of the contract if the non-signatory is seeking a "direct benefit" from the contract containing the arbitration clause. *Am. Bankers*, 453 F.3d at 628 (citing *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.*, 384 F.3d 157, 162 (4th Cir. 2004)).

Here, the Blackburn Plaintiffs are bringing the suit, and thus the question is whether they are seeking a "direct benefit" from the contract signed by Baker. Although they join Baker in alleging every single one of the counts in the original complaint—at no point does the complaint distinguish between claims levied by all three plaintiffs and those only alleged by one or two of them—the causes of action are not seeking to enforce the terms of the contract. Rather, Plaintiffs are seeking damages based on state law, the WVCCPA. To decide if the cause of action seeks such a direct benefit, courts evaluate "whether the plaintiff has asserted claims in the underlying suit that, either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause." *Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 629 (4th Cir. 2006). The WVCCPA creates a cause of action for a "consumer" if a "creditor" violates the provisions of the Act. W. Va. Code § 46A-5-101(1). This Court has previously held that, in an action under the WVCCPA, a non-

signatory's cause of action arises not from the contract itself, but from a breach of the West Virginia statute. *Wilson*, 2009 WL 2160775 at *4-5.

That the Blackburn Plaintiffs cannot be compelled to arbitrate their claims does not resolve the matter, however. Because Plaintiff Baker's claim will be arbitrated, the Court must then decide how to handle the Blackburn Plaintiffs' claims.

In two previous cases, this Court has dealt with similar situations, in which a signatory and a non-signatory of a debt contract both bring suit alleging violations of the WVCCPA. *See Wilson*, 2009 WL 2160775; *Miller v. Dell Financial Services, LLC*, Civil Action No. 5:08-cv-1184, Docket 29 (S.D. W. Va. June 23, 2009). In each of these cases, this Court found that, while the non-signatory could not be compelled to arbitrate his claims, staying the non-signatory's portion of the suit to allow for arbitration of the signatory's claims was the best use of judicial resources. *Id.*; *see also American Recovery Corp. V. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996) (finding "the decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion").

The reasoning in these previous dispositions is equally applicable in this case. While the Blackburn Plaintiffs may choose to submit their claims to arbitration as well, the Court cannot compel it. Likewise, the Court sees no advantage to allowing parallel legal disputes to occur in different forums. Thus, the Court will stay the portion of the case relating to the Blackburn Plaintiffs' claims until Plaintiff Baker has completed arbitration of her claim.

*C. Waiver of Arbitration*

In recent filings, Plaintiffs have raised new arguments, specifically alleging that Green Tree, by participating in the litigation in the district court, has waived whatever right to arbitration it may have. (Dockets 64, 65.) Green Tree responds by arguing, first, that the supplemental response should not be allowed, and second, that it has not waived its right to arbitration. It points to its early filing of a Motion to Compel Arbitration (Docket 4), its motions to stay the case or suspend the scheduling order while the Court considers arbitration (Dockets 20, 26), and its repeated attempts to avoid discovery until the last minute under the scheduling order (Docket 67 at ¶¶ 7, 8). Further, Plaintiffs' filing highlights several reservations made in footnotes to subsequent filings by Green Tree to protect its right to arbitrate (*e.g.*, Dockets 48, 49, 58).

A party may waive its right to arbitration if it is "in default in proceeding with such arbitration." 9 U.S.C. § 3. The Fourth Circuit has found that neither failing to assert arbitration as an affirmative defense nor "delay and participation in litigation" constitutes default on a party's right to arbitration. *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 343 (4th Cir. 2009). Although the Fourth Circuit found in *Forrester* that the right to arbitration had been waived, the circumstances are very different from those presented here. There, the party seeking to compel arbitration "waited until the eve of trial to file its motion to compel arbitration," following two years of very extensive pretrial preparations where defendants participated fully in discovery and the litigation process. *Id*.

The circumstances here are considerably different. Green Tree filed its Motion to Compel Arbitration at the beginning of the litigation in federal court. (Docket 4.) As noted above, it did everything possible to preserve that right while continuing to protect its interests should the Court find arbitration inappropriate. Moreover, Plaintiffs objected to at least one of Green Tree's attempts to stay the action (Docket 23), and Green Tree indicates that Plaintiffs objected "[o]n no less than

four separate occasions" to joining Green Tree in requesting relief from the scheduling order deadlines. (Docket 67 at ¶ 7.)

Given that Green Tree timely raised its arbitration argument and did not participate in litigation more than necessary to protect its rights, the Court concludes that Green Tree has not waived its right to arbitration. Moreover, Plaintiffs' double talk of refusing to stay the scheduling and yet seeking to force a waiver argument on Green Tree for complying with the scheduling order is unpersuasive. The Court refuses to fault Green Tree for following this Court's own order regarding scheduling, particularly since it is unclear that Plaintiffs would have consented to reopen discovery had the matter gone the other way. Thus, Plaintiffs' argument of waiver is rejected.

### III. CONCLUSION

As noted above, the Court is prohibited from evaluating the complaint or the likelihood of success on the merits of the various counts alleged. Once the arbitration clause is invoked, the Court's job is done.

For the reasons set forth above, Defendant Green Tree Servicing, LLC's Motion to Compel Arbitration and to Dismiss this Proceeding or, in the Alternative, to Stay the Proceeding Pending Arbitration [Docket 4] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the claims of Plaintiff Kaitlin Blackburn Baker are hereby **REFERRED** to arbitration in accordance with the terms of the contract and the Federal Arbitration Act. Defendant's request to dismiss the present action is **DENIED**, and this action, including the claims of Plaintiffs Cassandra Blackburn and Tyler Blackburn, is instead **STAYED** pending resolution of arbitration and **REMOVED** from the active docket of this Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                    ENTER:       March 31, 2010

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE